**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHNEL M. BAILEY, | ) | No. C 00-1865 MMC (PR) |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS;** |
| v. | ) | **DENYING MOTIONS FOR** |
| | ) | **EVIDENTIARY HEARING AND** |
| | ) | **APPOINTMENT OF COUNSEL;** |
| ANNE M. RAMIREZ, Warden, | ) | **DIRECTING FORMER COUNSEL TO** |
| | ) | **RETURN DOCUMENTS TO** |
| Respondent. | ) | **PETITIONER** |
| | ) | |
| _____ | ) | **(Docket Nos. 102, 103, 106 & 107)** |

On May 24, 2000, petitioner Johnel M. Bailey, a California prisoner proceeding pro

se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On December 21, 2000, the Court dismissed the petition as untimely.  On appeal, the Ninth

Circuit reversed, based on intervening case law, and remanded the matter for further

proceedings.  See Bailey v. Ramirez, 25 Fed. Appx. 661, 662 (9th Cir. 2002).  On November

12, 2002, petitioner filed an amended petition,[1] and, on June 17, 2003, the Court ordered

respondent to show cause why the petition should not be granted based on petitioner's

cognizable claims for relief.  On September 12, 2003, respondent filed an answer

accompanied by a memorandum and exhibits, to which petitioner, on December 29, 2003,

filed a traverse.

---

[1]Hereafter, the amended petition will be referred to as "the petition."

**United States District Court**
For the Northern District of California

1    Petitioner subsequently obtained counsel, Frank Prantil ("Prantil"), and the Court

2    granted petitioner's motion to stay further proceedings until September 15, 2005, to afford

3    counsel time to review the case and determine whether to move to amend the petition and/or

4    traverse.  On December 23, 2005, petitioner filed a motion for leave to amend the petition,

5    which motion was denied on February 27, 2006.  On April 20, 2006, the Court granted

6    petitioner's motion to substitute himself for Prantil and to proceed pro se, and Prantil was

7    ordered to return to petitioner all documents relating to this action.

8    Now before the Court are the petition, petitioner's motion for appointment of counsel

9    (Docket No. 102), petitioner's motions for an evidentiary hearing (Docket Nos. 103 & 107),

10   and petitioner's motion for a further order directing Prantil to return to petitioner the

11   documents relating to this action (Docket No. 106).

12                                        **BACKGROUND**

13   On December 29, 1995, an information was filed in Alameda County Superior Court

14   charging petitioner with the murder of Everett Moss ("Moss"), and, in an unrelated incident,

15   an aggravated assault on Martin Farris ("Farris").  The information further alleged petitioner

16   intentionally inflicted great bodily injury on the victim in the commission of both offenses,

17   and that he personally used a handgun in the commission of the murder.  On March 15, 1996,

18   the jury found petitioner guilty of second degree murder with personal use of a firearm, as

19   well as inflicting great bodily injury.  The jury found petitioner not guilty of the assault on

20   Farris.  On April 12, 1996, petitioner was sentenced to a term of 19 years to life. Petitioner

21   appealed his conviction and sentence to the California Court of Appeal, which summarized

22   the facts adduced at trial as follows:[2]

23          At about 7:20 p.m. on June 16, 1995, Mary Moss (Mary), the mother of
       Everett [Moss, Jr. (Everett)], observed her 32-year-old son standing outside her
24     home, talking with 19 year-old Troy "Goat" Horton (Horton) and a 16 year-old
       minor, Dexter.  A short time later, at about 7:30 p.m., Mary noticed defendant
25     had joined the group.  Defendant and Everett were arguing, and she heard her
       son tell defendant he did not want to fight because he could "whoop"
26     defendant.  Defendant, who was 17 years-old, and of a slighter build,

27   ─────────────────────

28          [2]The Court of Appeal did not include facts pertaining to the assault on Farris, in light
     of petitioner's acquittal of those charges.

                                              2

United States District Court
For the Northern District of California

responded if he could not "whoop" Everett, he knew someone who could do so. Defendant then left.

About 10 minutes later, Mary went outside and noticed defendant had returned; another man, "John-John" or John (John), was also there. She returned to the house until she heard gunshots. She ran outside and saw her son running away from defendant, who was holding a gun. According to Mary, after she yelled at defendant, he looked at her, placed the gun inside his jacket, and walked away. She called 911.

Officer Marcus Midyett (Midyett) responded and found Everett sprawled on the street in a pool of blood. The examining pathologist determined Everett died of a gunshot wound to his chest; the fatal bullet, fired from at least 10 inches away. Everett had a .14 percent blood-alcohol level.

Midyett found a live 9 millimeter round and two 9 millimeter expended casings near the driveway of the Everett's residence. Another person recovered a third spent 9 millimeter casing about 45 feet from the first spatter of Everett's blood. Criminalist Lansing Lee determined the three expended casings had been fired from the same weapon, a 9 millimeter Smith and Wesson semiautomatic pistol recovered by Midyett during a search of another residence on October 10, 1995.

Officers arrested defendant on June 23, 1995, and defendant waived his rights and gave two tape-recorded statements. Defendant initially denied any involvement in Everett's killing, but later admitted shooting Everett.

According to defendant's confession, Everett "went off on him" (meaning he wanted to fight) after defendant spit on the ground and the spit hit Everett. Everett told him to watch where he spit and when defendant replied, "[s]hut up," Everett threatened to "beat your little ass." Everett told defendant he would not fight him because he was a "youngster."[3]

Defendant stated he left and retrieved a loaded gun from beneath a bush near an abandoned house. He claimed he was not planning to use the gun, but wanted to scare Everett.

Defendant told the police when he returned to Everett's home with the gun, he argued with Everett again. Everett and defendant agreed to fight in Everett's backyard. Everett began walking; defendant followed. As they walked, defendant pulled out his gun. Everett turned, took a step towards defendant, and defendant pulled the slide back on the gun and pulled the trigger. Defendant did not know how many times the gun fired or how often he pulled the trigger, but admitted the weapon was pointed at Everett, who was standing six to eight feet away. Defendant insisted he did not intend to kill Everett. When he heard a woman yell, "hey," he ran off and threw the gun over the wall.

At the preliminary hearing, on December 18, 1995, Horton testified that Dexter, Everett, and he were talking and drinking malt liquor when defendant arrived. Defendant and Everett were standing close to one another when one of them accidentally spit in the face of the other. The two argued and Everett grabbed defendant by the shirt, told him he was a "light weight," and flung defendant away. Defendant told Everett he could "whoop" him or he could find someone who could do so. Defendant left and returned four or five minutes later. John also joined them. John and Everett began shooting dice. Everett and defendant began to argue again; but this time they decided to settle the argument in Everett's backyard.

According to Horton, defendant was following Everett when he pulled out a black gun and cocked it. Everett did not have a gun. When he heard the

---

[3]Alteration in original.

sound of the gun being cocked, Everett turned around and stepped towards defendant; defendant began firing.

On February 15, 1996, Horton was served with a prosecution subpoena to appear at trial on February 22, 1996. Horton did not appear on February 22, and the court issued "a bench warrant for contempt of court order" and set bail at $1500.

After hearing pretrial motions on February 26, the court recessed at 3:52 p.m., and ordered the matter continued for jury trial on February 29. At 4:10, the court was told witness Horton had been arrested for failing to appear and was now present. Defense counsel was absent, and had presumably left at about 3:52 p.m. The court ordered Horton to appear on February 29 and released him on his own recognizance. Horton signed an agreement to appear in court on February 29, 1996.

On February 29, Horton failed to appear and the prosecution requested the court to admit his preliminary hearing testimony. The defense objected, claiming the prosecution did not establish due diligence. The court found Horton unavailable (Evid. Code, § 240, subd. (a)(5)), and Horton's preliminary hearing testimony was read to the jury. (The court gave CALJIC No. 2.12 on testimony from an unavailable witness, which is as follows: "Testimony given by a witness who was unavailable at this trial has been read to you from the reporter's transcript of that proceeding. You must consider such testimony as if it had been given before you in this trial.")

At trial, Marlon "Poppy" Jefferson (Jefferson) testified he was playing basketball when defendant approached him and asked him to help "fix" the gun. Jefferson said he did not know how to fix the gun and defendant disappeared into the bathroom for two or three minutes. When defendant reappeared, he began to walk in the direction of Everett's home. About 15 or 20 minutes later, Jefferson learned Everett had been shot. Jefferson said the gun he saw in defendant's possession did not resemble the gun later retrieved by the police.

At trial, defendant's testimony differed significantly from his earlier confession. Contrary to the information he had given the police, he now claimed he had not left the area to retrieve a weapon. He also maintained he had never seen Jefferson on the day of the shooting. Instead, he said he had been carrying a Ruger pistol, rather than the Smith and Wesson the prosecution contended was used to kill Everett, when he began talking with Everett and the others.

He claimed he had previously seen Everett with a gun, and Everett had threatened to shoot defendant and others. Further, he claimed Everett was known for fighting and Everett had robbed him a week earlier.

After Everett and he argued, he left. He ran into John and the two separately returned to Everett's residence. Defendant and Everett argued and Everett suggested they fight in his backyard. As they walked to the backyard, defendant pulled his gun. Defendant cocked the gun and it jammed. Until he cocked it, defendant asserted, he did not know if the gun contained any bullets.

Defendant stated Everett then stopped walking and turned to face him. Everett was yelling at defendant and unbuttoning his shirt as though he were "fixing to kill this fool." Everett made a quick move to grab either defendant or the weapon. Defendant pulled back the slide thereby ejecting the obstructed bullet, and then let go of the slide, causing the gun to discharge accidentally. The gun continued to fire, although defendant claimed he did not pull the trigger. Defendant testified he had not wanted to kill Everett, but was afraid Everett was going to hurt or kill him.

In addition to defendant's testimony, officers testified they had arrested Everett for possessing narcotics. Another witness testified about Everett's

4

United States District Court
For the Northern District of California

1    involvement with drugs and fighting, and he claimed to have seen Everett with
     a weapon some years ago.

2         In rebuttal, Officer Paul Slivinsky, a firearms expert, explained that the
     semiautomatic used to kill Everett would fire only one round each time its

3    trigger was pulled.  Earlier in the trial, criminalist Lansing Lee (Lee) had stated
     the trigger pull on the gun used to kill Everett was four pounds on single action

4    and eleven pounds on double action.  Lee stated further that moving the slide
     on the weapon back would eject any cartridge in the chamber.

5         Prior to jury deliberations, the court instructed the jury to consider
     defendant's prior conviction for possessing cocaine for sale and his possession

6    of 14 cocaine rocks, as evidence relevant to his credibility.

7    People v. Bailey, No. A074645, slip op. at 2-6 (Cal. Ct. App. Aug. 12, 1997) (hereinafter

8    "Slip Op.") (attached as Resp.'s Ex. E).[4]

9         Following trial, the jury returned a verdict of not guilty of first degree murder, but

10   found petitioner guilty of second degree murder and found true the sentence enhancement

11   allegations for the use of a firearm and causing great bodily injury.  As noted, the trial court,

12   on April 12, 1996, sentenced petitioner to a term of 19 years to life, which term consisted of

13   15 years to life for the second degree murder, and 4 years for the firearm enhancement.  In

14   1997, the California Court of Appeal affirmed petitioner's conviction and sentence, and the

15   California Supreme Court, in a summary opinion, subsequently denied the petition for

16   review.  Petitioner thereafter filed a habeas petition in the Alameda County Superior Court,

17   which petition was summarily denied, and three habeas petitions in the California Supreme

18   Court, all of which were summarily denied.

19        Petitioner thereafter filed the instant petition, in which he raises the following claims

20   of constitutional error: (1) he was denied his right to counsel at a critical stage of his criminal

21   proceedings; (2) he was denied his right to confront and cross-examine adverse witnesses; (3)

22   he received ineffective assistance of counsel at trial when his attorney failed to investigate

23   and secure witnesses for his defense; (4) he received ineffective assistance of counsel at the

24   hearing to determine his fitness for prosecution; and (5) he received ineffective assistance of

25   counsel on appeal.

26

27

28        [4]The parties do not dispute the Court of Appeal's description of the record.

**DISCUSSION**

A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may nor issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "Clearly established federal law, as determined by the Supreme

**United States District Court**
For the Northern District of California

Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Id. at 412.  A state court decision no longer may be overturned on habeas review simply because of a conflict with circuit-based law, although circuit decisions remain relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir. 2003).  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

The state court decision to which 28 U.S.C. § 2254 applies is the "last reasoned decision" of the state court, in this case decision of the California Court of Appeal.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

B.   Petitioner's Claims

   1.   Right to Counsel

Petitioner claims he was denied his Sixth Amendment right to counsel when, prior to trial, the trial court decided outside the presence of defense counsel to release prosecution witness Troy Horton ("Horton) on his own recognizance.[5]  As noted above, the California Court of Appeal described the facts regarding Horton's failure to appear, and subsequent arrest and release, as follows:

> On February 15, 1996, Horton was served with a prosecution subpoena to appear at trial on February 22, 1996.  Horton did not appear on February 22, and the court issued "a bench warrant for contempt of court order" and set bail at $1500.
> After hearing pretrial motions on February 26, the court recessed at 3:52 p.m., and ordered the matter continued for jury trial on February 29.  At 4:10,

---

[5]The record does not indicate whether petitioner himself was present at the hearing, but petitioner does not assert that he was not present, nor does he claim any violation of his right to be present at such hearing.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the court was told witness Horton had been arrested for failing to appear and was now present. Defense counsel was absent, and had presumably left at about 3:52 p.m. The court ordered Horton to appear on February 29 and released him on his own recognizance. Horton signed an agreement to appear in court on February 29, 1996.

On February 29, Horton failed to appear and the prosecution requested the court to admit his preliminary hearing testimony. The defense objected, claiming the prosecution did not establish due diligence. The court found Horton unavailable (Evid. Code, § 240, subd. (a)(5)), and Horton's preliminary hearing testimony was read to the jury. (The court gave CALJIC No. 2.12 on testimony from an unavailable witness, which is as follows: "Testimony given by a witness who was unavailable at this trial has been read to your from the reporter's transcript of that proceeding. You must consider such testimony as if it had been given before you in this trial.")

(Slip Op. at 4.)[6]

A defendant's Sixth Amendment right to counsel requires that counsel be present at all "critical stages" of the prosecution of the defendant. United States v. Wade, 388 U.S. 218, 226, 237 (1967); United States v. Hamilton, 391 F.3d 1066, 1070-71 (9th Cir. 2004). Here, the record is not clear as to whether the February 26 hearing at which Horton was released was part of the prosecution of petitioner, as opposed to a separate contempt proceeding. The caption of the "Agreement to Appear" that Horton signed following the hearing identifies the defendant as "Horton Troy Orlando" and not petitioner, although the case number in the caption of said document is the same as that of petitioner's case. (Clerk's Transcript ("CT") (attached as Resp.'s Ex. B) at 131.)

Assuming the February 26 hearing constituted part of petitioner's case, such hearing did not amount to a "critical stage" of the prosecution and, consequently, the presence of defense counsel was not required under the Sixth Amendment.[7] "[T]he essence of a critical stage is not its formal resemblance to a trial, but the adversary nature of the proceeding,

---

[6]The record does not include a transcript of the February 26 hearing at which Horton was brought to court and released on his own recognizance, nor is there any indication that such hearing was transcribed.

[7]The California Court of Appeal did not reach the question of whether the hearing was a "critical stage" of the prosecution, but rather denied the claim for want of prejudice. (Slip Op. at 6-7.) Because the Court, as set forth infra, finds the hearing was not a "critical stage," it does not address the prejudice question. Further, where counsel is absent during a critical stage, the defendant need not show prejudice. See Hamilton, 391 F.3d at 1070, 1071-72 (finding absence of counsel during critical stage to be structural error).

combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel." United States v. Leonti, 326 U.S. 1111, 1117 (9th Cir. 2003).  A critical stage is a "trial-like confrontation, in which potential substantial prejudice to the defendant's rights inheres and in which counsel may help avoid that prejudice." Beaty v. Stewart, 303 F.3d 975, 991-92 (9th Cir. 2002).

Petitioner cites no authority, and the Court is aware of none, providing that a hearing as to whether to detain or release a witness constitutes a "critical stage" of the prosecution.  As discussed above, AEDPA mandates that habeas relief may be granted only if the state courts have acted contrary to or have unreasonably applied federal law as determined by the United States Supreme Court. See Williams v. Taylor, 529 U.S. at 412 ("Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence.").  The stages of a prosecution that the Supreme Court has found "critical" for purposes of the Sixth Amendment right to counsel include arraignments, Hamilton v. Alabama, 368 U.S. 52, 53055 (1961), post-indictment identification lineups, Wade, 388 U.S. at 236-37, sentencing, Membpa v. Rhay, 389 U.S. 128 (1967), and court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness, Estelle v. Smithy, 451 U.S. 454, 457-59 (1981).  Hamilton, 391 F.3d at 1070 (citing cases).

Unlike those proceedings, the hearing regarding whether Horton should be released or detained in custody was not adversarial in nature, but, rather, concerned the trial court's inherent power to enforce its orders and control the proceedings.  Moreover, the parties' respective positions on the matter were unlikely to have differed.  Although the prosecution certainly wanted its witness to appear at the trial, it is unlikely that it wished to antagonize him by seeking to have him jailed, and the defense, for its part, had no interest in securing the attendance of an unfavorable prosecution witness.[8]  Similarly, there was no possibility petitioner would be prejudiced in "some significant way" by defense counsel's absence from the hearing.  The possibility that the trial court might release on his or her own recognizance

---

[8]Petitioner does not argue, nor does the record indicate, defense counsel had evidence to impeach Horton such that it would have preferred Horton appear at trial.

United States District Court
For the Northern District of California

a witness unfavorable to the defense does not present the type of risk of prejudice to the defendant's ability to receive a fair trial as, for example, the defendant's appearing in a suggestive lineup, cf. Wade, 388 U..S. at 228-29 (finding police lineup to be critical stage because of "innumerable dangers," including possibility of improper suggestion and likelihood that issue of identity will be conclusively determined at that stage), or the admission of evidence that should be suppressed, cf. Hamilton, 391 U.S. at 1070 (finding pretrial motion to suppress critical because in many cases crucial issue at trial is admissibility of evidence found as result of search).[9]  Consequently, and in the absence of any authority to the contrary, the hearing at which the trial court decided to release Horton was not a "critical stage" of the proceedings, and counsel's absence therefrom did not violate petitioner's Sixth Amendment right to counsel.

Accordingly, petitioner is not entitled to habeas relief on this claim.

2.    Admission of Horton's Preliminary Hearing Testimony

Petitioner contends his right to confrontation was violated when the trial court admitted Horton's preliminary hearing testimony at trial despite the prosecution's failure to exercise due diligence to secure Horton's appearance to testify in person. Where, as here, the defendant has had the opportunity to cross-examine the witness at the preliminary hearing, the witness's preliminary hearing testimony may be admitted at trial without offending the Confrontation Clause, provided the witness is "unavailable" at trial.  See California v. Green, 399 U.S. 149, 165-66 (1970) (finding no Confrontation Clause violation in admitting declarant's preliminary hearing testimony at trial where declarant professed loss of memory at trial); see generally Ohio v. Roberts, 448 U.S. 56 (1980) (finding admission of hearsay evidence not violation of Confrontation Clause provided witness unavailable and statements

---

[9]The California Court of Appeal found the trial court's release of Horton was proper under California law because there was insufficient evidence to warrant the"draconian" step of jailing him.  (Slip Op. at 10, 11.)

have "adequate indicia of reliability").[10]  A witness is "unavailable" for purposes of the

Confrontation Clause if the witness has not appeared despite the prosecutor's "good faith

effort" to obtain the witness's presence.  See Barber v. Page, 390 U.S. 719, 724-25 (1968).

Prior to admitting Horton's preliminary hearing testimony, the trial court found the

prosecutor acted with "due diligence" in attempting to secure Horton's presence at trial.

(Reporter's Transcript ("RT") (attached as Resp.'s Ex. D) at 136.)  Based on such finding,

the trial court concluded Horton was "unavailable" under § 240(a)(5) of the California

Evidence Code,[11] and admitted Horton's preliminary hearing testimony.  (Id. at 134-36.)  The

California Court of Appeal upheld the trial court's finding that the prosecutor had exercised

"due diligence" and that Horton was "unavailable" under California Evidence Code §

240(a)(5), reasoning as follows:

> We find no error under either standard.  In determining whether due
> diligence has been shown, a court must consider "[t]he totality of the efforts of
> the proponent to achieve presence of the witness . . .."  (*People v. Sanders,*
> [1995] 11 Cal.4th 475, 523.)  When a witness is critical or vital to a case,
> reasonable precautions must be taken to keep the witness from disappearing.
> ([*People v.*]*Louis* [(1986)] 42 Cal. 3d 969, 989-91.)
> The prosecutor's efforts were insufficient, defendant maintains, because
> the prosecutor never asked the court to keep Horton in custody as a material
> witness though he had been arrested on the bench warrant.  He again claims the
> facts in this case are analogous to those in *Louis*.  For the reasons already
> discussed extensively, the facts in *Louis* are not applicable.[[12]]  Furthermore, in
> this case trial counsel conceded, "I realize since he has failed to appear when

---

[10]Although in Crawford v. Washington, 541 U.S. 36, 60 (2004), the United States
Supreme Court substantially revised the analysis for determining whether the admission of
out-of-court statements violates the Confrontation Clause, Crawford announced a "new rule"
that does not apply retroactively to cases on habeas review.  See Whorton v. Bockting, 127
S.Ct. 1173, 1184 (2007) (citing Teague v. Lane, 489 U.S. 288 (1989)).  Consequently, the
Court applies Roberts and Green, the law in effect prior to Crawford.

[11]California Evidence Code § 240(a)(5) provides that a witness is "unavailable" if he
or she is "[a]bsent from the hearing and the proponent of his or her statement has exercised
reasonable diligence but has been unable to procure his or her attendance by the court's
process."

[12]The Court of Appeal distinguished People v. Louis, 42 Cal. 3d 969, 992 (1986),
because the missing witness in Louis, unlike Horton, provided the "only evidence" that the
defendant was the shooter, was facing a sentence on felony charges, and "had a *chronic*
history of failing to show up for court hearings," whereas "other than failing to appear when
originally subpoenaed, there was no evidence to suggest Horton would not appear again,
especially since the repercussions for failing to appear again would be more serious."  (Slip
Op. at 11 (emphasis added).)

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

requested I'm sure the D.A. has done everything in her power to locate him."
In contrast, although the witness in *Louis* stated he was going to spend the
weekend at a friend's house, the prosecutor never attempted to obtain the
friend's name or address.  As the People point out, defendant points to no fact,
known to the prosecutor, indicating Horton would not appear other than his
failure to respond to the subpoena.

Rather than placing Horton in custody from February 26 until February
29, the court increased the penalty in the event of another nonappearance.  We
agree with the trial court's conclusion: "If the standard for due diligence were
that we have to lock them up once we think they might not show, it would be
an incredible standard as a public policy . . . ."  Moreover it would be a policy
in conflict with article I, section 10 of the California Constitution.

(Slip Op. at 15.)

The Court of Appeal's determination that Horton was "unavailable" under California

Evidence Code § 240(a)(5), based on the prosecutor's having acted with "due diligence" in

attempting to secure his presence at trial, is a determination of state law binding on this

Court.  See Hicks v. Feiock, 485 U.S. 624, 629 (1988).  With respect to whether the

prosecutor acted in "good faith" under the Confrontation Clause in attempting to secure

Horton's appearance, it was not "unreasonable" within the meaning of 28 U.S.C.

§ 2254(e)(2) for the Court of Appeal to make the factual finding that the prosecutor had acted

with "due diligence."  On February 15, the prosecutor subpoenaed Horton to appear at trial

on February 22; when Horton failed to appear, the prosecutor obtained from the trial court a

bench warrant for Horton's arrest; and the prosecutor thereafter sought and obtained Horton's

signature on an "Agreement to Appear," which set forth enhanced punishment if Horton

failed to appear for trial on February 29.  Petitioner points to no facts or evidence concerning

Horton that would lead the prosecutor to reasonably believe the agreement would not be

sufficient, or that jailing Horton would be necessary.[13]  Indeed, as noted by the Court of

Appeal, defense counsel conceded that the prosecutor "has done everything in her power to

locate him."  (RT at 135.)  As the prosecutor acted with "due diligence" in attempting to

secure Horton's presence at trial, the Confrontation Clause requirement that Horton be

"unavailable," i.e. that he failed to appear at trial despite the prosecutor's "good faith effort"

---

[13]The trial court indicated that had the prosecutor requested that Horton be jailed, "I
would not have been inclined to lock him up."  (RT at 135.)

1    to ensure his presence at trial, was met in this case.  Consequently, the admission of Horton's

2    preliminary hearing testimony did not violate petitioner's rights under the Confrontation

3    Clause of the federal constitution.

4         Accordingly, petitioner is not entitled to habeas relief on this claim.

5         3.    Ineffective Assistance of Counsel at Juvenile Hearing

6         Petitioner claims his attorney, Alfons Wagner ("Wagner"), failed to investigate and

7    present mitigating evidence at the juvenile fitness hearing, in violation of petitioner's Sixth

8    Amendment right to the effective assistance of counsel.[14]  Petitioner was 17 years old at the

9    time of the offense, and, on August 28, 1995, a hearing was held in the juvenile court, under

10   § 707 of the California Welfare and Institutions Code, to determine whether petitioner was a

11   fit subject to be tried in juvenile court.  (See Resp.'s Ex. A.)  Following the hearing, the

12   juvenile court determined petitioner was "not a fit and proper subject to be dealt with under

13   juvenile court law" and referred the matter to the District Attorney for prosecution in the

14   Superior Court.  (See Resp.'s Exs. A1-A2.)

15        The Sixth Amendment right to counsel applies to a juvenile court hearing to determine

16   whether the juvenile should be tried as an adult.  See Kent v. United States, 383 U.S. 541,

17   554 (1996).  The Sixth Amendment right to counsel includes the right to the effective

18   assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984).  To succeed

19   on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's

20   performance fell below an "objective standard of reasonableness" under prevailing

21   professional norms; and (2) the petitioner was prejudiced by counsel's deficient performance,

22   i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result

23   of the proceeding would have been different."  Id.  A habeas petitioner has the burden of

24

25        [14]This is the fourth claim in the petition, and, like petitioner's third and fifth claims,
     addressed below, it was summarily denied by the state courts in denying petitioner's state
26   habeas petitions.  As there is no "reasoned" state court opinion with respect to these claims,
     the Court conducts "an independent review of the record" to determine whether the state
27   court's denial of the claims was an unreasonable application of clearly established federal
     law under 28 U.S.C. § 2254(d)(1).  Plascencia v. Alameda, 467 F.3d 1190, 1197-98 (9th Cir.
28   2006).

**United States District Court**
For the Northern District of California

1 showing through evidentiary proof that counsel's performance was both deficient and

2 prejudicial.  See Toomey v. Bunnell, 898 F.2d 741, 743 (9th Cir. 1990); Rios v. Rocha, 299

3 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting ineffective assistance of counsel claims where

4 petitioner failed to produce evidence of prejudice).  In addition, the petitioner must establish

5 that the state court, in denying petitioner's claims, "applied Strickland to the facts of his case

6 in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002).

7       Under California law, based on petitioner's age and the charges against him, petitioner

8 had the burden of overcoming a presumption that he was unfit to proceed in juvenile court.

9 See Cal. Welf. & Inst. Code §§ 707(b)-(c).  The following five criteria are to be considered in

10 a juvenile court's fitness determination:

> (1) the degree of criminal sophistication exhibited by the minor;
> (2) whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.
> (3) the minor's previous delinquent history;
> (4) success of previous attempts by the juvenile court to rehabilitate the minor;
> (5) the circumstances and gravity of the offense alleged in the petition to have been committed by the minor.

15 Id. at § 707(c).  The presumption of unfitness stands "unless the juvenile court concludes

16 based upon evidence, which evidence may be of extenuating or mitigating circumstances,

17 that the minor would be amenable to care, treatment, and training programs available through

18 the facilities of the juvenile court . . .."  Id.

19       Petitioner claims Wagner was ineffective because he failed to interview or call

20 witnesses who would have provided helpful testimony at the hearing.  In order to succeed on

21 a claim that counsel was ineffective in failing to call a favorable witness, a federal habeas

22 petitioner must identify the witness, provide the testimony that the witness would have given,

23 show that the witness was likely to have been available to testify and would have given the

24 proffered favorable testimony, and establish that such testimony created a reasonable

25 probability that the jury would have reached a verdict more favorable to the petitioner.  See

26 Alcala v. Woodford, 334 F.3d at 862, 872-73 (9th Cir. 2003).  Where the petitioner does not

27 identify the testimony the absent witness would have provided, the claim fails.  See United

28 States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989).  Similarly, a petitioner's mere

1   speculation that the witness would have given helpful information if interviewed by counsel

2   and called to the stand is not enough to establish ineffective assistance.  See Bragg v. Galaza,

3   242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

4        Here, petitioner identifies 11 witnesses[15] whom he claims Wagner should have

5   interviewed and called, but then says nothing more than they would have provided

6   "mitigating" testimony; he does not describe what that testimony would have been.  In Dows

7   v. Wood, 211 F.3d 480 (9th Cir. 2000), the Ninth Circuit denied the petitioner's claim that

8   counsel had been ineffective in failing to investigate and call a witness because the petitioner

9   provided no evidence, beyond his own "self-serving affidavit," that the witness would have

10  provided helpful testimony, such as "an affidavit from the alleged witness."  211 F.3d at 486-

11  87; see also Berry, 814 F.2d at 1409 (rejecting, on direct appeal, claim that counsel was

12  ineffective where defendant did not indicate what testimony excluded witnesses would have

13  provided); cf. Alcala, 334 F.3d at 872 & n. 3 (distinguishing, inter alia, Dows and Berry;

14  finding ineffective assistance of counsel where petitioner submitted interviews reflecting

15  testimony missing witnesses would have provided).  Similar to Dows, petitioner here does

16  not provide affidavits from any of the witnesses, or any evidence other than his own

17  statements in his traverse, showing what testimony the missing witnesses would have

18  provided or that such testimony would have been helpful to petitioner at the juvenile fitness

19  hearing.  Nor does petitioner provide any evidence, beyond his own conclusory statements,

20  demonstrating any such witness was available to testify at the juvenile fitness hearing.  Under

21  such circumstances, petitioner has failed to show counsel was ineffective in failing to call

22  witnesses.

23       In his motion for an evidentiary hearing, petitioner requests an evidentiary hearing

24  regarding the alleged witnesses Wagner failed to interview or call at the juvenile fitness

25

26

27

28       [15]The alleged witnesses consist of petitioner's father, his aunt, two "mentors," five
    "juvenile counselors," and a "head summer employee."

United States District Court
For the Northern District of California

hearing.[16]  A federal habeas petition may be denied without an evidentiary hearing where it consists solely of conclusory statements unsupported by any proof or offer thereof.  See Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001).  Here, petitioner makes only conclusory allegations in support of his claims.  He makes the conclusory allegation that the witnesses would have provided "mitigating" testimony, and speculates that if Wagner had interviewed them they "could have helped counsel to further investigate and document all available, community resources and devise a rehabilitative program" for petitioner. Petitioner does not describe or make any offer of proof as to the testimony that any of the witnesses would have given, or of what information they would have provided to counsel with respect to a "rehabilitative program" for petitioner.  As petitioner's allegations with respect to the testimony the witnesses would have provided and the information counsel could have gained from them are conclusory and speculative, petitioner fails to establish grounds for holding an evidentiary hearing with respect to this issue.

In addition, an evidentiary hearing on a claim of ineffective assistance of counsel is not warranted if the petitioner has failed to present sufficient grounds for relief under Strickland.  See Davis v. Woodford, 384 F.3d 628, 641, (9th Cir. 2004) (upholding denial of evidentiary hearing as to five ineffective assistance claims where petitioner did not "demonstrate[ ] that he [was] entitled to relief on any claim").  Here, petitioner has not demonstrated he is entitled to relief on his claim, in that he has not shown Wagner's failure to interview and call the witnesses at the juvenile fitness hearing was prejudicial.  There was strong evidence supporting the juvenile court's finding that petitioner was not a fit subject for juvenile court, using the five criteria in § 707(c) of the California Welfare and Institutions Code.  If the case against a petitioner is strong, there is a significantly lesser likelihood that he was prejudiced by his counsel's errors.  See Greene v. Henry, 302 F.3d 1067, 1072-74 (9th Cir. 2002).  In this instance, the evidence of petitioner's unfitness was summarized in the

---

[16]In his two requests for an evidentiary hearing, petitioner seeks, respectively, an evidentiary hearing as to (1) the witnesses he alleges Wagner failed to investigate and call at the juvenile fitness hearing, and (2) the witnesses he alleges his trial counsel, Deborah Levy, failed to investigate and call at trial (discussed infra).

1   probation report[17] as follows:

2       This minor has been involved in criminal activities for several years. His first
        finding was for selling rock cocaine. He has continued this activity to the
3       present time. His closest friend is a cousin, who has an extensive criminal
        history and is presently in jail for an attempted murder. This crime was
4       premeditated. This all shows an obvious failure of criteria #1. His delinquent
        history consists of findings or admissions for three felonies and one
5       misdemeanor. This has all occurred within a three year period. Therefore, he
        fails criteria #3. There have been several rehabilitative attempts by the
6       Juvenile Court. All have failed. Hence, he fails criteria #4. The crime is
        obviously grave. The minor's threats to the community at large may be high
7       since he admits an explosive temper. It should be noted that his comment on
        October 5, 1993 to the police was "I'll be out, everyone knows how juvenile
8       courts work. They don't do shit. I'll keep selling 'til I'm 18 then I'll start
        shooting fools and you cops." This all expresses a failure for criteria #5. It is
9       only criteria #2 that he may not obviously fail. But, given his past criminal
        history, and the above comment, it is highly uncertain he can pass criteria #2.
10          Because 707(c) of the Welfare and Institutions Code clearly states that
        the minor is to be "fit and proper under each and every one of the above
11      criteria," this probation officer recommends that this minor be remanded to the
        Adult Court and proceed therein.
12
    (Resp. Ex. A at 12.) Petitioner does not describe the allegedly favorable testimony the
13
    missing witnesses would have provided at the fitness hearing. As such, there is no basis for a
14
    finding that a reasonable probability exists that, had Wagner interviewed the witnesses, their
15
    testimony would have overcome the strong evidence that petitioner was not a fit subject to be
16
    dealt with under juvenile court law. See Berry, 814 F.2d 1409 (finding no reasonable
17
    probability that witness's testimony would have made difference in outcome of hearing
18
    where defendant did not describe what testimony witness would have given). Consequently,
19
    petitioner has failed to set forth a prima facie case that he was prejudiced, as defined in
20
    Strickland, by Wagner's failure to interview or call witnesses in connection with petitioner's
21
    juvenile fitness hearing. As such, petitioner is not entitled to habeas relief or an evidentiary
22
    hearing with respect to this claim.
23
        Petitioner also claims that Wagner was ineffective in failing to seek a psychological
24
    evaluation of petitioner and present expert testimony regarding such an evaluation at the
25
    juvenile fitness hearing. Where the evidence does not warrant it, the failure to call an expert
26
    does not amount to ineffective assistance of counsel. See Wilson v. Henry, 185 F.3d 986,
27

28      [17]This Court does not have a transcript of the record of the fitness hearing.

                                            17

990 (9th Cir. 1999) (finding decision not to consult psychiatric expert for trial not unreasonable where evidence did "not raise the possibility of strong mental state defense"). Petitioner does not describe any information of which Wagner could or should have been aware that would have led counsel reasonably to believe such an evaluation would have been helpful.   Moreover, petitioner simply asserts Wagner should have sought psychological evaluation; he does not indicate what information such an evaluation would have revealed, or what expert testimony could have been given based on such evaluation.   In the absence of any indication that a psychological evaluation would have been helpful to petitioner, there is no basis for a finding that Wagner performed deficiently in failing to seek such an evaluation or present expert testimony based thereon, nor is there any basis for a finding that the outcome of the hearing would have been different had Wagner done so.

Lastly, petitioner claims Wagner failed to seek review, by a juvenile court judge, of the juvenile court referee's fitness order.  Petitioner, however, fails to indicate the basis on which Wagner could have sought such review, or what errors, if any, the referee made in finding petitioner unfit for juvenile court.  Cf. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989) (holding petitioner, to show ineffective assistance of counsel on appeal, must show nonfrivolous claims counsel could have raised, and reasonable probability that had claims been raised, he would have prevailed on appeal).  Moreover, in light of the particularly strong evidence, described above, that petitioner did not meet the criteria for fitness, there is no indication a juvenile court judge, in reviewing the referee's decision, would have reached a different conclusion.  Consequently, petitioner has failed to demonstrate Wagner was deficient in failing to seek review of the referee's decision, or a reasonable probability that such review would have lead to a different outcome.

Accordingly, habeas relief is not warranted on this claim.

///

///

///

///

18

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4.      Ineffective Assistance of Counsel at Trial

Petitioner claims his trial counsel, Deborah Levy ("Levy"),[18] was ineffective in failing to investigate and interview several witnesses that would have been helpful to his defense. According to petitioner, "Corey Burts, John Gadue, Dexter, Crystal McElroy, Janice Diggs and Rhonda Iles" were willing to provide "mitigating evidence in support of petitioner['s] imperfect self-defense" theory.[19]  Petitioner presented the defense that he shot Moss accidentally or, in the alternative, that he did so either in self-defense or in "imperfect" self-defense.  In particular, petitioner testified at trial that he shot Moss accidentally when the gun jammed and discharged.  Petitioner also testified, however, that he feared Moss, and that, when petitioner took out his gun, Moss took a step toward him and made a gesture as if to grab the gun; in his confession to the police, which was admitted at trial, petitioner stated that Moss took a step towards him before petitioner pulled the trigger.  In closing argument, Levy argued petitioner shot Moss by accident, but also argued, in the alternative, that petitioner shot Moss either in self-defense or in "imperfect" self-defense.[20]

Petitioner claims he told Wagner the names of the above witnesses, and that Wagner told petitioner the defense investigator, Clarick Brown ("Brown"), would interview them. Petitioner further alleges Levy received Wagner's files, which included the names of said witnesses, as well as a summary of the case by Brown and Brown's report of an interview of one of the witnesses, Corey Burts ("Burts").  (Traverse, Exs. A-B.)  Petitioner also alleges the witnesses were "willing" to testify at trial and that they would have provided "mitigating" evidence of petitioner's "fear" of Moss in order to bolster his imperfect self-defense theory.

_____

[18]Levy replaced Wagner as petitioner's attorney for trial.  This is the third claim in the petition.

[19]Petitioner does not supply a last name for "Dexter," who was a minor at the time of the incident, and his last name is not contained in the record.  "John Gadue" appears to be a reference to the individual identified elsewhere in the record as "John Gadeau" or "John-John."

[20]The jury was given instructions on self-defense and imperfect self defense.  (CT at 200.)

**United States District Court**
For the Northern District of California

1     As discussed above, in order to obtain habeas relief on his claim that counsel was

2   ineffective in failing to interview or call witnesses, or to obtain an evidentiary hearing on this

3   issue, petitioner must make more than conclusory allegations that the witnesses were

4   available and would have provided helpful testimony.   See Dows, 211 F.3d at 482-83

5   (denying habeas relief on ineffective assistance of counsel claim where petitioner failed to

6   present any evidence, such as affidavits, as to what helpful testimony such witnesses would

7   have provided); Berry, 814 F.2d at 1409 (rejecting claim that counsel was ineffective where

8   petitioner did not indicate what testimony excluded witnesses would have provided); see also

9   Phillips, 267 F.3d at 973 (finding evidentiary hearing not warranted when petitioner provided

10   only conclusory allegations); Davis, 384 F.3d at 641-43, 647-50 (finding evidentiary hearing

11   not warranted where prima facie case of ineffective assistance of counsel not established).

12   Petitioner makes only a conclusory allegation that the witnesses were "willing" to testify, but

13   does not provide any evidence, or make any offer of proof, to demonstrate they would have

14   been available to testify at the trial.  Further, with the exception of Burts, who is discussed

15   infra, petitioner does not describe or provide any evidence, such as affidavits from the

16   witnesses, as to what testimony they would have provided, but instead provides only the

17   conclusory allegation that they would have provided "mitigating" evidence in support of an

18   imperfect self-defense theory.

19     With respect to Burts, petitioner provides a report from Wagner's investigator, Brown,

20   describing an interview of Burts at which Burts described what he knew about the shooting.

21   (Traverse, Ex. A.)[21]  According to that report, Burts told Brown the following. At the time of

22   the shooting, Burts was about a block away with Gadeau.  (Id.)  They heard shots, and went

23   to investigate, finding Moss's body on the ground, but no one else around.  (Id.)  Later that

---

[21]There is no statement or indication in this summary, or anywhere else in petitioner's papers or the record, that Brown interviewed any of the other witnesses petitioner identifies. Petitioner attaches to his traverse a "Factual Summary" of the case, which petitioner states was prepared by Brown and turned over to Levy, and which mentions two of the other alleged missing witnesses, Dexter and Gadeau.  (Traverse, Ex. B.)  The "Factual Summary" states only that Burts could help locate Dexter and Gadeau, however; there is no description of what testimony they would have provided.

**United States District Court**
For the Northern District of California

1    night, he and Gadeau saw petitioner, who seemed frightened and told them the shooting was

2    accidental.  (Id.)  Petitioner also told them Moss had been harassing and threatening

3    petitioner, and they were about to get into a fight when Moss "discovered" petitioner had a

4    gun.  (Id.)  Petitioner further told them that Moss reached for the gun to take it from

5    petitioner, and in the ensuing struggle it discharged several times.  (Id. at 2.)   According to

6    Burts, Moss has a reputation as a dangerous man and was known to carry a gun and beat

7    people up.  (Id.)  Burts frequently saw Moss drunk, harass people, and pull out a gun to

8    intimidate them.  (Id.)

9           Even assuming Burts and the other witnesses were available to testify at trial, that

10   Burts would have testified consistently with his interview as reported by Brown, and that the

11   other witnesses testified in some fashion that petitioner feared Moss, there is no reasonable

12   likelihood that the outcome of the trial would have been different.  As noted, petitioner

13   claims the witnesses' testimony would have bolstered his "imperfect" self-defense theory.

14   Under the concept of "imperfect" self-defense, "'[a]n honest but unreasonable belief that it is

15   necessary to defend oneself from imminent peril to life or great bodily injury negates malice

16   aforethought, the mental element necessary for murder, so that the chargeable offense is

17   reduced to manslaughter.'"  In Re Christian S., 7 Cal. 4th 768, 773 (Cal. 1994) (quoting

18   People v. Flannel, 25 Cal. 3d 668, 674 (Cal. 1979)).  Voluntary manslaughter based on

19   imperfect self-defense is a lesser-included offense of the crime of murder.  See People v.

20   Barton, 12 Cal. 4th 186, 200-01 (Cal. 1995) (holding imperfect self-defense is "not a true

21   defense; rather, it is a shorthand description of one form of voluntary manslaughter"; further

22   holding "voluntary manslaughter, whether it arises from unreasonable self-defense or from a

23   killing during a sudden quarrel or heat of passion, is not a defense but a crime; more

24   precisely, it is a lesser offense included in the crime of murder").

25          Under California law, however, there is a limitation on the availability of imperfect

26   self-defense that is critical to this case.  Self-defense, whether reasonable or unreasonable,

27   may not be invoked when a defendant through his own wrongful conduct has created the

28   circumstances under which he fears his adversary's attack.  See In re Christian S., 7 Cal. 4th

United States District Court
For the Northern District of California

at 773.  Here, petitioner testified he pulled his gun before Moss took a step towards him and allegedly made a gesture that suggested he would try to take the gun from petitioner. Similarly, in his confession, petitioner admitted he had taken out his gun before Moss took a step towards him.  Petitioner does not suggest there is any evidence, nor is there any in the record, disputing the fact that petitioner had pulled out the gun before Moss appeared to try to take it from him.  Similarly, petitioner stated in both his trial testimony and his confession, and there is no evidence to the contrary, that petitioner had voluntarily agreed to enter into a fight with Moss.  When petitioner pulled out a gun after agreeing to fight Moss, he created the very circumstances under which it became possible for Moss to take the gun and kill him.

The proffered testimony by Burts, and any testimony from the other witnesses that petitioner feared Moss, at most corroborates the other evidence that Moss was a neighborhood bully who was known to possess a gun and harass people, and that he had threatened petitioner in the past.  Neither Burts's potential testimony, nor the alleged testimony by the other witnesses, would have contradicted the undisputed evidence that on the day in question petitioner pulled out a gun before Moss took a step towards him or made any other gesture to cause petitioner to believe Moss might take the gun away from him and shoot him.  Consequently, their testimony would not have altered the fact that petitioner, according to both his own testimony and his confession, created the circumstances under which he feared Moss might kill him, which evidence, under California law, precluded petitioner from relying on imperfect self-defense.  As the testimony of Burts and the other witnesses would not have enabled petitioner to succeed on a theory of imperfect self-defense, petitioner cannot make a <u>prima facie</u> showing under <u>Strickland</u> that his counsel's alleged failure to interview Burts and the other witnesses was prejudicial.  Under such circumstances, there is no need for an evidentiary hearing on this claim, and petitioner is not entitled to habeas relief.  <u>See</u> <u>Davis</u>, 384 F.3d at 641-43, 647-50 (finding evidentiary hearing not warranted and denying habeas relief where petitioner failed to establish <u>prima facie</u> case of ineffective assistance of counsel).

**United States District Court**
For the Northern District of California

5.      Ineffective Assistance of Counsel on Appeal

Petitioner claims his appellate attorney provided ineffective assistance with respect to his appeal because he did not raise therein the issues discussed above, specifically, that petitioner received ineffective assistance of counsel based on the alleged failure to investigate and call witnesses at the juvenile fitness hearing and at trial.  The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland.  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  A petitioner thus must show that counsel's failure to raise claims fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would have prevailed on appeal.  Id. at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694).  In that regard, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  Id. at 1434.  Consequently, appellate counsel frequently will remain above an objective standard of competence and have caused his client no prejudice where he declines to raise a weak issue.  Id.

As discussed above, petitioner's claims of ineffective assistance of counsel are without merit.  Consequently, counsel could reasonably have decided not to raise these claims, and, even if counsel had raised them, there is no reasonable likelihood they would have succeeded.  Accordingly, the failure to raise them on appeal was neither deficient nor prejudicial, and petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is hereby DENIED; the motions for an evidentiary hearing are hereby DENIED; and, as an evidentiary hearing is not warranted, the interests of justice do not require appointment of counsel and petitioner's motion for such appointment is hereby DENIED.  Petitioner's motion for a further order directing Prantil, his former counsel in this action, to return to petitioner the documents relating to this action is hereby GRANTED, and Prantil is directed to return to

1    petitioner forthwith any documents pertaining to this action.

2          This order terminates Docket Nos. 102, 103, 106 and 107.

3          The Clerk shall close the file.

4          IT IS SO ORDERED.

5    DATED: June 21, 2007

6                                                    MAXINE M. CHESNEY
                                                     United States District Judge

**United States District Court**
For the Northern District of California